### LYNCH v. WRIGHT.

(Circuit Court, S. D. New York. June 10, 1899.)

1. DAMAGES—BREACH OF CONTRACT TO CONVEY REALTY—LOSS OF RESALE.

On the breach of a contract for the sale of real estate, special damages resulting to the purchaser from the failure to make a resale are only recoverable where the contract for resale was brought to the knowledge of the defendant, and by reason of such knowledge he impliedly undertook, in case of his failure, to make conveyance to pay such special damages by way of indemnity.

2. SPECIFIC PERFORMANCE—CONTRACT TO SELL REAL ESTATE—RENTS AND PROFITS—INTEREST.

On a decree for the specific performance of a contract to convey real estate at suit of the purchaser, he may elect to pay interest on the purchase money since the time the conveyance should have been made, and take the rents and profits received by the defendant, or to allow the defendant to retain such rents and profits, in which case he will be exempted from payment of interest.

3. SAME—DAMAGES FOR DETERIORATION OF PROPERTY.

Where residence property has been allowed by the defendant to remain unoccupied during the pendency of a suit by a purchaser to enforce a specific performance of a contract for its sale, in consequence of which it deteriorates in condition, the complainant is entitled on a decree in his favor to an allowance for such deterioration.

This was a suit in equity for the specific performance of a contract to convey real estate and to recover damages for its breach.

Abram Kling, for complainant.

Olcott & Olcott and Geo. N. Messiter, for defendant.

TOWNSEND, District Judge. This case was argued at final hearing upon the following stipulation:

"That a decree directing specific performance, as prayed in the complaint, be entered herein, and that if, in the opinion of the court, after the examination of the record herein, the complainant shall be entitled to any costs, damages, or compensation herein, by reason of any acts of defendant, such costs, damages, or compensation may be assessed by the court upon the testimony, properly admissible, now before the court, without prejudice to the right of either party to appeal."

The sole question, then, is as to the amount of damages, if any, to which the complainant is entitled. On April 27, 1896, the defendant agreed to sell his house to complainant for $11,000,—$200 cash on execution of contract, and $10,800 on delivery of deed.

Complainant paid the $200, and on May 11th, the day agreed on for delivery of the deed, tendered the $10,800, and demanded the deed, when it appeared that there was a lis pendens on the property. Complainant thereupon refused to accept the deed, unless the defendant would furnish a satisfaction piece or would accept $1,000 cash and a mortgage for $10,000, payable on cancellation of lis pendens. Defendant's agent declined to furnish said satisfaction piece or to make such allowance for said lis pendens, and the sale was not effected. Defendant canceled said lis pendens on April 21, 1898. Complainant alleges that upon April 29, 1896, she agreed to sell said property to one Paul P. Todd for $13,500, but, by reason of said incumbrance, was unable to carry out said agreement, and that said property has depreciated in value, so that it is not now worth more than $10,000. On May 11, 1896, this suit was brought.

Complainant claims that she is entitled to recover as damages— First, the amount of depreciation in or waste to the property during the time that she has been kept out of possession by the defendant; second, the loss sustained by her inability to carry out said contract of sale to Todd for $13,500; and, third, the value of the use and occupation of the premises from the date of the contract, and that defendant should not be allowed interest on the purchase money.

The defendant is not liable for damages for the failure of the sale to Todd. The evidence as to such alleged sale is uncertain and insufficient. The contract is not offered in evidence, and it does not definitely appear what the written agreement was which is said to have been lost, nor why no copy thereof was produced by complainant. But, irrespective of this question, the damages for the failure to resell were remote or speculative in character, and were not such as would naturally have resulted from said breach. In such cases the rule is well settled that only the natural and ordinary damages can be recovered, and that special damages resulting from a failure to make a resale can only be recovered where the contract for resale was brought to the knowledge of the defendant, and where, by reason of his special knowledge of the circumstances, he impliedly undertakes, in case of his failure to make the conveyance, to pay such special damages by way of indemnity. Wallace v. Ah Sam, 71 Cal. 197, 12 Pac. 46; Hadley v. Baxendale, 26 Eng. Law & Eq. 398; Hobbs v. Railway Co., L. R. 10 Q. B. 111; Masterton v. Mayor, etc., of City of Brooklyn, 7 Hill, 61; Howard v. Manufacturing Co., 139 U. S. 199, 11 Sup. Ct. 500; Telegraph Co. v. Hall, 124 U. S. 444, 8 Sup. Ct. 577; Boyd v. Fitt, 14 Ir. C. L. 43; Griffin v. Colver, 16 N. Y. 494; Hamilton v. McPherson, 28 N. Y. 72.

It appears from the evidence that the premises have been without a tenant since the date of the original contract, and that the depreciation therein is largely due to this fact, and there is no evidence that the defendant has made any effort to rent these premises. The vendee may elect to pay the interest on the purchase money during the time he has been wrongfully deprived of possession, and take the rents and profits received by the vendor, or he may allow the vendor to retain the rents and profits, in which case he will be exempted from the payment of interest. Worrall v. Munn, 53 N. Y. 185. In

this case, therefore, the complainant should not be held liable for the payment of interest during the time that she has been wrongfully deprived of possession. The general rule is that courts of equity will as far as possible put the parties in the condition in which they would have been if the contract had been duly performed according to its terms. In the case at bar, had the contract been carried out, the property, presumably, would not have deteriorated in value by being left unoccupied during said period. An allowance should be made for such deterioration. Worrall v. Munn, supra; Bostwick v. Beach, 105 N. Y. 661, 12 N. E. 32; Sedg. Meas. Dam. (8th Ed.) § 1021; Esdalie v. Stephenson, 1 Sim. & S. 122.

Complainant's testimony is to the effect that the depreciation in value is directly due to defendant's negligence. While the failure of defendant to introduce testimony upon any of these questions makes it difficult for the court to exactly estimate the damages, yet, in view of all the evidence and of the statement of counsel that they desire to simplify the questions so as to obtain an equitable disposition of the matter by the court, I think a decree should be entered directing a specific performance of said contract, and that from the sum of $10,800, agreed to be paid by the complainant, there should be deducted the interest on the $200 originally paid, and the sum of $1,000 for the deterioration in the value of the property, and complainant's costs.