WILLIAM H. SMITH *vs.* ISAAC ROSE *et al.*
WILLIAM H. SMITH, JR., *p. a. vs.* SAME.
MARCH 17, 1939.
PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. These actions of trespass on the case for negligence were tried together before a jury in the superior court. In the minor's case he is seeking to recover damages for his own personal injuries, and in the other case the minor's father is attempting to recover for loss of his son's services and for expenses incurred by reason of the latter's injuries.

Being in doubt as to the person from whom they were entitled to recover, the plaintiffs, under the provisions of general laws 1923, chapter 333, sec. 20, joined as defendants in the actions Isaac Rose and William Goldberg. At the trial in the superior court, at the conclusion of all the evidence and on motion of the defendant Rose, the trial justice directed that a verdict in each case be entered in said defendant's favor; but he permitted the cases to go to the jury on the question of the liability of the defendant Goldberg to the plaintiffs. The jury thereupon returned a verdict against said defendant Goldberg in favor of the minor plaintiff in the sum of $5000, and in favor of his father for $2000. Thereafter the defendant Goldberg filed in each case a motion for a new trial, which motion, after a hearing, the trial justice denied in the father's case and granted in the minor's case, unless the latter filed a remittitur of so much of his verdict as was in excess of $2500, in which event the motion for a new trial in that case was also denied. Such a remittitur was duly filed.

A bill of exceptions containing numerous exceptions, which will be referred to more specifically hereinafter, was duly prosecuted to this court in each case by the defendant Goldberg, and the cases are now before us solely on these bills of exceptions, the plaintiffs and the defendant Rose not having prosecuted any such bills of exceptions in either case.

The defendant Goldberg has an exception in each case to the ruling of the trial justice in directing verdicts in favor

of the defendant Rose. We are of the opinion that the defendant Goldberg cannot properly maintain these exceptions. The present defendants were sued under the statute, hereinbefore referred to, which in this state permits a plaintiff, who is in doubt as to the person from whom he is entitled to recover, to join, under certain circumstances, two or more defendants in order to ascertain which, if either, is liable. Cases, therefore, which involve and pass upon the right, if any there be, of a true joint defendant to maintain exceptions or other appellate proceedings, based on the ground that his co-defendant has been improperly released by a ruling of the trial court, are not applicable in the instant cases.

Here the defendants, though joined in the same action, were in effect individual defendants. In order to recover from either, the plaintiffs had the burden of proving their case against such defendant. The dispute was not between the two defendants, but between the plaintiffs and each defendant separately. Even if the evidence showed that one defendant was not guilty, it did not necessarily follow that the other defendant was guilty. The plaintiffs still had the duty of establishing that fact. Conceivably, the plaintiffs might fail as to both defendants if they did not prove satisfactorily their case against either one. The defendant Goldberg had no right to insist that the defendant Rose be kept in the case.

In view of the facts brought out in evidence, the ruling of the trial justice in directing a verdict for the latter did not change or enlarge the question of the defendant Goldberg's liability. The trial justice explained to the jury the situation in which this direction left the defendant Goldberg, and the latter took no exception to this explanation.

The defendant Goldberg, in order to be entitled to except to a ruling of the superior court in a jury trial, must be found to be a person aggrieved by such ruling within the meaning of the provisions of G. L. 1923, chap. 348, sec. 9. Upon con-

sideration, and for the reasons above indicated, we find that he cannot properly be held to be an aggrieved party within the meaning of said section and, therefore, he cannot maintain the exceptions we are now discussing. His second exception in each case is overruled.

The defendant Goldberg, hereinafter referred to as the the defendant, contends that the trial justice was in error in refusing to grant his motion that a verdict be directed in his favor in each case. In pressing this motion he urged in its support two grounds: First, that the premises where the accident in question took place were not under his control and second, that the plaintiffs did not prove that he was guilty of the negligence which they alleged in their declarations.

It appeared from the evidence that the minor plaintiff, who, on the morning of November 7, 1935, the time of the accident involved herein, was about eighteen years old, was lawfully standing on the sidewalk on Willard avenue in the city of Providence near the corner of that street and Staniford street. His back was toward the property line on said Willard avenue and he was standing near the curb facing said street, which he was about to cross. At that time an underground tank, which had been used for the storage of gasoline, and which was beneath the premises immediately in the rear of said plaintiff as he stood near the curb, exploded. As a result, he was thrown across Willard avenue and against an automobile parked on the opposite side of that street, thereby causing the injuries for which he is now asking damages.

The evidence showed that in June 1933 Rose purchased at a foreclosure sale the entire premises in a portion of which the tank was located. Thereafter the National Universal Rubber Co., Inc., occupied these premises under a written lease from Rose, which expired October 14, 1935. On January 10, 1935, this lease, with the consent of Rose, was assigned by the lessee to the defendant, who at that time also

purchased from the lessee the business which the latter was conducting in the premises. The defendant then proceeded to carry on therein his own tire and blowout patch business. On September 10, 1935, Rose and the defendant entered into a new lease which was to run from October 15, 1935, to October 14, 1936. This lease, which was unrecorded, was in effect at the time of the explosion. Under this last-mentioned lease the property to be covered thereby was described as follows: "That building located at #150-158 Willard Avenue, in the City of Providence, State of Rhode Island. To Have and to Hold the same with the appurtenances unto said Lessee . . . ." The defendant maintains that the portion of the premises beneath which was the tank that exploded did not pass to him from Rose under the lease last referred to. The plaintiffs take a contrary position.

According to the evidence the property purchased by Rose at the foreclosure sale consisted of a parcel of land on which was a large irregular-shaped, one-story brick building which had been used as a garage, and which substantially covered said parcel except for a small triangular-shaped portion thereof at the junction of Willard avenue and Staniford street. This building was numbered as set out in the lease and had entrances from Willard avenue, Staniford street, Ash street and the above-described triangular-shaped portion of the lot. Said entire parcel bounded easterly on Staniford street approximately 123 feet, southerly on Ash street about 120 feet, westerly by an irregular line on property of a third person about 110 feet and northerly on Willard avenue approximately 84 feet.

The said small triangular-shaped portion of the property measured from its apex about 39 feet on Staniford street, 36 feet on Willard avenue and its third side directly across from one street to the other, where one end of the building was located, about 47½ feet. This area had been used by previous occupants of the building as a gasoline station and, at the time the defendant obtained his lease from Rose in

September 1935, was equipped with two pumps and at least one large underground tank. The defendant, however, apparently did not operate the gasoline station in connection with his business. This area was entirely covered with cement or concrete, and was freely accessible to vehicles and persons from both Willard avenue and Staniford street.

In refusing to grant the defendant's motion for a directed verdict the trial justice ruled that, as a matter of law, the above-described triangular-shaped area passed to the defendant under his lease and was under his management and control at the time of the explosion. Where property demised under a lease is described only by the street number of the house or building involved, it is generally held that so much of the lot upon which the building stands as is necessary for the complete enjoyment of the building for the purpose for which it is let passes under the lease, and nothing more. *Meredith* v. *McCormick,* 208 Mich. 563, 8 A. L. R. 669.

Even if we assume, as the defendant argues, that he rented the building for the purposes of conducting therein a tire and patch business only, and had no intention of selling gasoline, which fact, however, does not clearly appear from the evidence, yet it does appear that the defendant, in conducting his said business, had his office in the portion of the building immediately contiguous to the triangular-shaped area. This office, which was numbered 150 Willard avenue, was entered directly from the outside only by means of a door opening onto said area, and on each side of the door was a large window lighting said office. On this door the word "Office" was painted. In fact, said area might well be considered to be the approach to or front entryway of the building in question.

Further, it appeared from the evidence herein that Rose, during occupancy of the premises by the defendant and by his predecessor, did not in any way use or assume control of the small triangular-shaped area in question or attempt

to lease it to anyone else. In fact, he contends that the entire premises passed under the lease to the defendant. The latter testified that he crossed said area on an average of five or six times a day in going to and from his office; that after the explosion he permitted laundry trucks to be parked there for a consideration to himself and that several times before the accident he had ordered children playing about the pumps, which were located not far from the office door, to leave the said area. There was also testimony from other witnesses substantially to the effect that automobiles and trucks were at times parked on said triangular-shaped area, the latter often loaded with old tires and on one such occasion, while the defendant was present, a truck appeared to be connected by a hose either to one of the pumps or to the underground tank.

In view of the nature and arrangement of the premises in question, the purpose for which they were rented, the conduct of the parties in connection with their use under the defendant's lease and all other pertinent facts and circumstances appearing in the evidence, we find that the trial justice ruled correctly in holding that the small triangular-shaped area involved herein passed to the defendant under his lease. It is also our opinion that he assumed control and management of said area, and that he did not, as he contends, merely receive under his lease an easement of passage over said area as a way of necessity to and from his office. In our judgment, the inclusion of the said area in the premises demised under the lease was necessary in order to give to the lessee complete enjoyment of the building described in the lease for the purpose for which it was let. In our opinion, therefore, the trial justice did not commit error in refusing to grant defendant's motion for a directed verdict as based on the ground that the premises in question were not under his control.

The above holding disposes of several of defendant's exceptions. He requested the trial justice to submit to the

jury the following question for a special finding by them: "Did the defendant, Goldberg, on November 7, 1935 have control of the land in which the tank was located by reason of his tenancy as lessee under the lease marked 'Plaintiff's Exhibit G'?" The trial justice refused to grant this request, and the defendant took an exception. The ruling of the trial justice was correct. The question as framed was largely one of law, and the action of the trial justice in connection therewith was consistent with his ruling that the small triangular-shaped area passed to the defendant under his lease. The defendant's third exception is, therefore, overruled.

In view of the fact that the defendant received under his lease the small area in question, the trial justice, in our opinion, did not commit error in refusing to grant the defendant's request to charge the jury as follows: "The lease of a building includes the land on which it is located. The use of the word 'appurtenances' in the lease did not give to the defendant Goldberg a lease of, or control over, the land in which the tank was located." This refusal of the trial justice formed the basis for the defendant's fourth exception, which is overruled.

We have examined the parts of the charge of the trial justice covered by the defendant's fifth and eighth exceptions, particularly in connection with references to the control of the defendant over the triangular-shaped area. In accordance with our previous holding, we find that such parts of the charge are unobjectionable, and that the defendant takes nothing by these exceptions, which are also overruled.

The defendant's contention that the evidence failed to establish any negligence on his part, which alleged failure was the second ground upon which he based his motion for a directed verdict, must now be considered. In passing upon this matter we are governed by our well-established rule that such a verdict should not be directed if, on any reasonable view of the evidence, the plaintiff is entitled to recover.

The negligence complained of in the plaintiffs' amended declarations, which contain two counts, in substance was that the defendant permitted the filler pipe leading from the tank in question to the ground level to remain open and uncovered at that point, and that the defendant knew, or, in the exercise of due care should have known, of the danger of an explosion because of his maintenance of the tank and pipe in the above-described condition.

There is no direct evidence of what caused the explosion; but there are facts in evidence from which such cause can reasonably be inferred. An officer of the Providence fire department, who examined the premises very soon after the accident and who was a witness for the plaintiff, testified that in his opinion the explosion was not caused by gas or by any electrical contact or spark. The explosion did considerable damage, smashing windows, knocking down the pumps and a lamp-post, breaking up the concrete with which the triangular-shaped area was paved and exposing parts of the underground tank, the ends of which were blown out.

The said officer gave evidence that, among the debris, he found the flange or head of the filler pipe which extended from the tank to the ground, but was unable to find the cap or plug which ordinarily covered the opening of said pipe at the ground level. This witness described the condition of the flange or head which, when in position, was embedded in the concrete pavement of the said area and which, when found, had fragments of concrete still adhering to it. He testified in particular with reference to the threads inside said flange or head into which the cap or plug screwed. He gave evidence substantially that, when fully screwed in, the cap or plug would engage a considerable number of said threads and then lock, but that when he examined said flange or head only about two threads appeared clean, and that the remainder were dirty and contained sediment. He further testified that none of these threads were stripped,

destroyed or marked in any way. From all these facts, and others in evidence, he gave it as his opinion that the cap or plug was not in place at the time of the explosion within the tank.

The same witness also stated in evidence that when he examined the interior of the tank, through one of its broken ends, he saw liquid in the bottom of the tank and detected the odor of gasoline. He testified that gasoline fumes, when mixed with air, are highly inflammable and explosive, and will so react to any igniting substance or element. He then gave evidence that in the debris at the area in question he found partly burnt leaves and paper.

Another witness for the plaintiffs testified in substance that, in going to and from her work, she crossed the small triangular-shaped area four times a day; that during the three days immediately prior to the explosion she had observed a round hole several inches in diameter in the concrete pavement of said area a short distance in front of the office door, hereinbefore referred to, and approximately in the position where the cap or plug of the filler pipe leading to the underground tank was located. The defendant, however, in his testimony, in substance denied that the cap or plug of the filler pipe was off at any time just prior to the explosion.

The evidence to which we have thus referred in detail and other evidence in the case, such as that showing the ease of access to the area in question, the frequent playing of children thereon and the crossing thereof by the defendant five or six times daily, and the inferences to be drawn from all such evidence, clearly raised material questions of fact to be determined in the first instance by the jury. This is particularly so in relation to the presence or absence of the cap or plug of the filler pipe at the time of the explosion, and to the defendant's knowledge of that fact, or whether he would have known it, if in the exercise of due care under all the circumstances. We are of the opinion, therefore, that the

trial justice was likewise correct in refusing to grant the defendant's motion that a verdict be directed in his favor on the ground that the plaintiffs had failed to prove the defendant's negligence as alleged. The defendant's first exception is overruled.

As to the part of the charge of the trial justice to which the defendant's sixth exception is directed, we are of the opinion that, in order to fairly get its meaning, it must be considered in connection with other portions of the charge to which no exception was taken. It is obvious that in the part to which exception was taken the trial justice was merely attempting to point out to the jury that the plaintiffs, in order to recover, did not have to show exactly how the explosion came about. In our judgment, the part in question cannot properly be said to be inconsistent with other portions of the charge. We find that the trial justice, in giving said part of the charge, did not commit prejudicial error, and the defendant's sixth exception is, therefore, overruled.

The defendant's seventh and ninth exceptions may be considered together. Each is to a part of the charge of the trial justice in which he is dealing with the alleged absence of the cap of the filler pipe at the time of the explosion, and with the knowledge which the defendant had, or should have had, of that alleged fact. We have examined the parts of the charge covered by these two exceptions and do not find any statement therein which, in our opinion, constituted error. Said seventh and ninth exceptions are also overruled.

The defendant's remaining exception, his tenth, is to the refusal of the trial justice to grant unconditionally his motion for a new trial in each case. We have examined the evidence herein and are of the opinion that it fairly raises the question of whether or not the defendant, having control and management of the area involved by virtue of his lease, was guilty of the negligence alleged by the plaintiffs in their amended declarations. The jury decided that question fav-

234

orably to the plaintiffs, and their verdicts on the question of liability have been approved by the trial justice, who had the benefit of seeing and hearing the witnesses as they testified and, hence, was in an advantageous position to pass upon their credibility. We held that the jury's finding that the defendant was liable was supported by the evidence. As we cannot say, after considering the evidence, that the decision of the trial justice was clearly wrong or that he misconceived or overlooked any evidence, in accordance with our well-established rule we will not disturb his finding. The defendant's tenth exception is overruled.

All of the defendant Goldberg's exceptions are overruled in each case. Ex. &c. No. 7921 is remitted to said court for entry of judgment on the verdict. Ex. &c. No. 7922, the minor's case, is remitted to the superior court for the entry of judgment on the verdict, as reduced by the remittitur.

*Fergus J. McOsker,* for plaintiffs.

*Henry M. Boss,* for defendant Goldberg.

*Arthur H. Feiner, William A. Gunning,* for defendant Rose.